ELICK, AN INDIAN, *vs.* WASHINGTON TERRITORY.

Arraignment defined.

It cannot be waived upon a charge of murder.

Consent of counsel, to entry of plea of not guilty, will not dispense with arraignment.

Not only must there be arraignment, but the prisoner must personally enter his plea, unless shown to be incapacitated.

These requirements rest in reason and authority.

In the trial of one unacquainted with the English language, he should hrough a sworn interpreter, have the charge made known to him, his plea entered by the same means, and in like manner, as the trial proceeds, should the evidence be made known to him.

Error to the Third Judicial District.

Opinion by WYCHE, Associate Justice.

An indictment for murder was found against the plaintiff in error at the February term, 1861, of the Third Judicial District, and the case continued to the ensuing August term, at which time the plaintiff in error was put upon his trial, and a verdict of guilty of murder in the first degree, and that the prisoner suffer death, was rendered, and the prisoner accordingly sentenced to be hung on the 21st of November, 1861.   Motions for a new trial and in arrest of judgment having been made, overruled and excepted to, plaintiff presents his writ of error to this court, and for error assigns the following causes:

1.   The record of conviction shows that the prisoner was not arraigned, but his arraignment was waived by counsel.

2.   The record shows the prisoner did not plead in person, but by counsel.

3.   The record shows the proper oath was not administered to the jury.

4. The Court below erred in admitting the testimony of Ferguson in regard to the cap found in the house of the deceased, and in overruling a motion for a new trial for that reason.

5. The record and evidence certified, show that three of the trial jurors had not the qualifications required by law, and the Court erred in overruling a motion for a new trial for that reason.

6. The Court erred in overruling a motion for new trial, for the reason stated therein, to wit: "Accident and surprise, and that the verdict is contrary to law."

7. The record does not show that the prisoner was present in Court when the verdict of guilty was rendered against him, nor on motion for new trial and in arrest of judgment.

8. The record shows that the prisoner is an Indian—that all the witnesses against him, except one, spoke the English language and that their testimony was not interpreted to the prisoner.

9. The indictment is vague, uncertain and insufficient to sustain a conviction: 1. As to the person alleged to have been killed, and his name. 2. As to the time and manner of killing, and the time of the death. 3. As to the allegations generally.

10. The Court erred in overruling the motion in arrest of judgment, for the reasons stated therein, to-wit: 1. No legal authority in the grand jury for the Territory of Washington to inquire into the offense, in this, because the Government of the United States has the sole and exclusive jurisdiction thereof. 2. That the facts as stated in the indictment do not constitute a crime punishable by the laws and in the courts of the Territory, because the crime was committed, if at all, by an Indian belonging to a tribe in amity with the United States, and under their exclusive guardianship, and was committed in the "Indian country."

11. Other manifest errors.

We will now examine the errors assigned, or as many of them as may be necessary to a disposition of the case. The first and second errors assigned are intimately connected, and

may properly be considered together. In the matter of these errors, the second is as follows:

"Comes now F. A. Chenoweth, Esq., who prosecutes in behalf of the Territory, and the defendant in his own proper person, and by his attorneys, S.. Garfielde and B. F. Dennison, Esquires. The prisoner upon being asked as to his right name, replied that it was 'Elick.' Arraignment of prisoner waived by counsel, and upon being asked as to the charge in the indictment, plead 'not guilty' by counsel."

Does this record show such an arraignment and plea as the law contemplates, and as is essential to a legal trial? An arraignment consists of three parts: 1. Calling the prisoner to the bar by his name, and requesting him to hold up his hand or do some other act of identification. 2. Reading the indictment to him in such language as to convey to his mind the nature of the charge against him. 3. Demanding of him whether he is guilty or not guilty. 1st Chitty's Criminal Law, pages 282-4; 1st Roscoe's Evidence, page 224; 2 Hale, 219; Bouvier's Law Dictionary, vol. 1, page 120. The prisoner in this case, it seems, in accordance with Sec. 233, pages 149-50, Criminal Practice Act, 1859-60, was asked his right name, and replied that it was Elick. Whether this can be regarded in this case as any part of the arraignment, is questionable. It may probably be regarded as one step taken in the arraignment, but if so, the record shows that at this time the further arraignment of the prisoner was waived by counsel. Could counsel at this time waive the other essential parts of an arraignment, and enter a plea of not guilty for the prisoner? Our statute (page 149, Criminal Practice Act, 1859-60), provides certain things on the arraignment of a prisoner. Does not the statute use the word arraignment in the sense it is used at common law, and in the sense in which arraignments have long been had at the Courts of the country? There can be no room for controversy on this view. Articles 5th and 6th, amendments to the Constitution of the United States, among other rights secured to the accused, declare "the accused shall enjoy the right to be informed of the nature and cause of the accusation" against him; and however the law

may be in inferior crimes, in capital cases when the prisoner is put upon his trial, this right cannot be waived by the counsel nor denied by the Court. Nor is it an answer to this to say that a waiver of arraignment by counsel and entering a plea of not guilty by counsel, secure to the prisoner all the benefits of an arraignment in person or a plea of not guilty entered by prisoner in person, and that thereafter prisoner should not be permitted to except to what was not to his disadvantage on the trial. The prisoner, if guilty, might consider it to his interest to plead guilty and put himself upon the mercy of the jury or Court. But whether so or not, before any man "shall be held to answer for a capital or otherwise infamous crime," it is absolutely indispensable that the nature of the accusation as contained in the indictment should be made known to him, that he may enjoy the privilege of assenting or dissenting, by plea of guilty or not guilty, to the charge alleged. A brief reference to some authorities will show how careful Courts have been to have the accused duly arraigned and the charge in the indictment conveyed to his mind. Thus where a prisoner, on his arraignment, stood mute, the Court ordered a jury to determine whether the prisoner was mute of malice or by the visitation of God; and the jury finding the prisoner mute by the visitation of God, and it appearing to the Court the prisoner could be informed by means of signs, he was arraigned and plead in that way. (Jones' case, 1 Leach, page 102.) So in another case where the prisoner was found mute, but could read and write; the indictment was handed to him, with the usual questions written upon paper, and after he had plead, and stated in writing he had no objection to the jury, the trial proceeded, and the Judge's notes were handed to him after the examination of each witness, and he was asked in writing if he had any questions to put. (2 Lew, C. C., page 137, Thompson's case.) In the case of Com. *v.* Hill, 14 Mass., page 207, it was held by the Court, if a deaf and dumb person be arraigned, the indictment must be explained to him by a sworn interpreter.

The requirement in capital cases that the prisoner should personally plead, rests upon reason and authority equally con-

clusive.    In the case of the State v. Smith, 2 Iredell, page 402, it was held that a plea by attorney of a party indicted for an assault with intent to rob, is a nullity, and that the defendant must plead in person.    See also Wharton's Crim. Law, page 245, 3d edition; U. S. Dig. Crim. Law, page 420, Sec. 1172, where it was held in the case of McQuillan v. the State, Smedes and Marsh, page 387, that defendant must plead in person, and a plea by attorney was a nullity.    2 vol. Leading Crim. Cases, pages 449 and notes; Geo. Palmer v. the Territory, Supreme Court, W. T., Dec. 1854.

These authorities, and numerous others of similar import might be cited, show that the Courts have held that an arraignment and plea in person of the accused, in "capital or otherwise infamous crimes," to be indispensable to a legal trial and the cases show that in this matter, no question of convenience can be considered.

In the trial of an Indian not familiar with the English language, the proper method of procedure is to have the accused brought to the bar, the indictment made known to him by a sworn interpreter, and his plea entered by the same means, and as the trial progresses, the evidence made known to him through the interpreter.    In any other view of the matter, his personal attendance would be a meaningless ceremony, and the prisoner tried in violation of the laws and Constitution of the land. The Constitution of the United States is co-extensive with the vast empire that has grown up under it, and its provisions securing certain rights to the accused in criminal cases, are as living and potent on the shores of the Pacific as in the city of its birth.    In the matter of these rights it knows no race.    It is the rich inheritance of all, and under its provisions in the Courts of the country, on a trial for life, the savage of the forest is the peer of the President.

In the view here taken of the matter, the Courts possess no discretionary power in the matter of an arraignment, and if they did, many large reasons suggest themselves to the Court against any relaxation of a strict arraignment.

A personal arraignment and plea of the prisoner in this case

being essential to a legal trial, and none such having been had in the Court below, it follows that all subsequent proceedings in the case were without warrant of law; and while the various errors assigned have been carefully considered by the Court, it will be unnecessary, and perhaps to some degree improper, to pass any opinion on them.

Judgment below must be reversed, and a new trial granted to the prisoner.